Filed 4/29/15  P. v. Greenhood CA3

# NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C076122 |
| Plaintiff and Respondent, | (Super. Ct. No. 13F4389) |
| v. | |
| ROBERT ALAN GREENHOOD, | |
| Defendant and Appellant. | |

Defendant Robert Alan Greenhood appeals from a judgment and the imposition of a suspended sentence following his guilty pleas to felony vandalism (Pen. Code, § 594, subd. (b)(1))[1] and misdemeanor infliction of corporal injury on a cohabitant (§ 273.5, subd. (a)).  He contends the trial court erred in refusing to award him presentence custody credits for the nearly six months he spent wearing a global positioning system (GPS)

---

[1] Undesignated statutory references are to the Penal Code.

electronic monitoring device while released on supervised own recognizance (SOR). We reject defendant's contention and shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant was involved in two domestic disputes with former girlfriends. After the second incident, defendant was arrested and charged by complaint with first degree residential burglary (§ 459), false imprisonment by violence (§ 236), misdemeanor corporal injury to a cohabitant (§ 273.5, subd. (a)), and misdemeanor vandalism (§ 594, subd. (b)(2)(A)). The complaint further alleged that defendant committed the burglary and false imprisonment offenses while released on his own recognizance (OR) on charges arising from the first domestic dispute. (§ 12022.1.)

Defendant appeared before the trial court on July 10, 2013, was remanded to the Shasta County jail, and bail was set at $75,000. He was also referred to probation for SOR. However, apparently as a result of capacity constraints at the jail, he was released on OR later that day.

Defendant was placed on SOR on September 26, 2013. As defense counsel explained, defendant "was put on a GPS on September 26 by agreement when the Court—when counsel for the People was going to ask that he be remanded back into custody given some new information they had received relevant to the misdemeanor case, which was eventually filed but dismissed as part of the plea agreement." The court referred defendant to probation to be placed on the SOR program in the interim, changing his status from OR to SOR. Counsel advised the court that defendant had read and understood the 21 conditions of the SOR program. The SOR release agreement, dated September 26, 2013, contains the following notation: "Reason for O.R.: Court order[ed] SOR."

2

On January 31, 2014, defendant was charged by consolidated information with first degree residential burglary (§ 459—count 1), making criminal threats (§ 422—count 2), two counts of false imprisonment by violence (§§ 236, 237—counts 3 & 8), two counts of corporal injury to a spouse or cohabitant (§ 273.5, subd. (a)—counts 4 & 9), exhibiting a deadly weapon (§ 417, subd. (a)(1)—count 5), misdemeanor vandalism (§ 594, subd. (b)(2)(A)—count 6), and felony vandalism (§ 594, subd. (b)(1)—count 7). The consolidated information alleged that defendant committed the offenses charged in counts 1, 2 and 3 while on bail or released on OR within the meaning of section 12022.1.

On February 14, 2014, defendant pleaded guilty to counts 4 and 7, with count 4 declared to be a misdemeanor. The plea was entered on condition that defendant would be placed on formal probation and would serve no more than one year in county jail.

Defendant appeared for sentencing on March 13, 2014. Prior to sentencing, defense counsel argued that defendant was entitled to presentence custody credits for the nearly six months he spent wearing a GPS device pursuant to sections 2900.5 and 1203.018. As we shall discuss, section 2900.5 requires the trial court to award presentence custody credits for "days served in home detention pursuant to . . . section 1203.018." (§ 2900.5, subd. (a).) Section 1203.018 authorizes counties to offer electronic monitoring for inmates held in lieu of bail in county jail. (§ 1203.018, subd. (a).) Following a brief discussion, the trial court continued the sentencing hearing to allow briefing and further consideration of the issue.

At the continued sentencing hearing on March 25, 2014, defendant testified that the GPS device was placed on him on September 26, 2013, by a probation officer. According to defendant, the probation officer advised him of "a set of rules to follow for tracking purposes," including (1) that he stay away from the victim's residence (or else he would be taken into custody); (2) that he observe a curfew requiring him to be home between the hours of 11:00 p.m. and 6:00 a.m.; (3) that he not leave the county without

3

permission; (4) that he make sure that the probation department had his current address and phone number; (5) that he consent to searches of his home and person; and (6) that he wear the GPS device at all times or face prosecution for escape. Defendant also testified that he understood he was required to either wear the GPS device or return to jail.

The form SOR release agreement defendant signed on September 26, 2013, also stated these six conditions: "1) I will appear at all times and places as ordered; [¶] 2) I will not violate any laws or conditions of release; [¶] I will not leave California without the court's permission; [¶] 4) If I fail to appear in a felony case, I will be charged with a new felony; in a misdemeanor case with a new misdemeanor; [i]f I am arrested outside California, I agree to be delivered immediately to California without challenge and waive extradition; [¶] 5) I understand if there are any violations of this agreement or any change of circumstances affecting my release, a judge may revoke my release and return me to jail or require that I post bail; [¶] 6) Other Conditions: [¶] SOR Conditions [¶] GPS Conditions."[2]

The trial court next heard argument on the issue of custody credits. The prosecutor asserted, "When you have a home detention, you're not free to roam the town from 6:00 in the morning until 11:00 at night, you're allowed to go to and from work and that's it. The defendant could have gone anywhere up until 11 o'clock curfew, according to his testimony. That's not home confinement. It is somewhat restricted travel, but that's not doing jail at home where you're allowed to go to work so you can pay for your monitor." Although the prosecutor referred to "home detention" during argument, the

---

[2] With regard to paragraph "6) Other Conditions: [¶] SOR Conditions [¶] GPS Conditions," the record was later augmented to include the heretofore missing SOR release program with the 21 conditions, including condition No. 10, which states, "You shall abide by all rules of the Electronic Monitoring Program and the Global Positioning System (GPS) Agreement." The rules of the Electronic Monitoring Program and GPS Agreement do not appear in the record.

record is otherwise silent with respect to statutory home detention programs in Shasta County.[3] The record does not specify whether Shasta County offers an electronic monitoring program pursuant to section 1203.018 and, if so, whether the county has adopted rules and regulations implementing the program. The record is also silent as to the nature of any such rules and regulations, assuming they exist.

Following argument, the trial court denied defendant's request for presentence custody credits, stating, "The statute itself to apply to the defendant, that is [section] 1203.018, says the section shall apply—this section shall only apply to inmates being held in lieu of bail and on no other basis. That is, I interpret that to be he is being held on bail on pending charges versus being sentenced in another case, for example, or held for out of county warrants or other sorts of things. Being held in lieu of bail means bail has been set and that he has not posted it, so that is why he's being held. He can be released if he posts bail. He was not someone who was being held in lieu of bail, in fact, [he] was out at the time he made the agreement to maintain an own recognizance release based on things that were being brought to the Court's attention which had bearing on that own recognizance release."

While recognizing that the GPS device acted as a significant restraint on defendant's liberty, the trial court continued, "I can't change the language of the statute to make it apply to him because the practical effect is indeed what you say, his liberty was restrained because of that agreement, I agree with that; but this statute does not apply to him . . . because he wasn't a person who fits the criteria necessary to apply it to him. I can't bend over backwards to try to make it apply to him, it just as a practical reading of

<hr>

[3] In his remarks, the prosecutor stated, "This is something done by probation, not the county jail staff. County jail if they were to release somebody on home electronic monitoring would have done it themselves as the custodial entity here in Shasta County."

the statute doesn't."  Accordingly, the trial court concluded, "the time spent on the GPS does not apply as actual credits against whatever sentence ultimately is handed down."

The trial court then placed defendant on formal probation for three years and ordered him to serve 270 days in jail.  Defendant received presentence custody credits for four days.

Defendant filed a timely notice of appeal.

## DISCUSSION

## I.  Statutory Interpretation

On appeal, defendant contends he was entitled to presentence custody credits for the nearly six months he spent wearing a GPS device pursuant to section 2900.5.  The People, for their part, argue that defendant was not entitled to custody credits because he was not "an inmate held in lieu of bail" within the meaning of section 1203.018.  We agree with the People.

This case requires us to determine the meaning and interrelationship of two statutes, sections 2900.5 and 1203.018.  " 'As in any case involving statutory interpretation, our fundamental task is to determine the Legislature's intent so as to effectuate the law's purpose.'  [Citation.]  The rules for performing this task are well established.  We begin by examining the statutory language, giving it a plain and commonsense meaning.  [Citation.]  We do not, however, consider the statutory language in isolation; rather, we look to the entire substance of the statutes in order to determine their scope and purposes.  [Citation.]  That is, we construe the words in question in context, keeping in mind the statutes' nature and obvious purposes.  [Citation.]  We must harmonize the various parts of the enactments by considering them in the context of the statutory framework as a whole.  [Citation.]  If the statutory language is unambiguous, then its plain meaning controls.  If, however, the language supports more than one

6

reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history." (*People v. Cole* (2006) 38 Cal.4th 964, 974-975.)

Applying these principles, we conclude that sections 2900.5 and 1203.018 are sufficiently clear to allow us to determine their plain meaning. Accordingly, we need not consider legislative history or other extrinsic indications of legislative intent. (*People v. Sinohui* (2002) 28 Cal.4th 205, 211.)

Section 2900.5, subdivision (a) provides in pertinent part: "In all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody, including, but not limited to, any time spent in a jail, camp, work furlough facility, halfway house, rehabilitation facility, hospital, prison, juvenile detention facility, or similar residential institution, all days of custody of the defendant, including days served as a condition of probation in compliance with a court order, credited to the period of confinement pursuant to Section 4019, *and days served in home detention pursuant to Section 1203.018*, shall be credited upon his or her term of imprisonment . . . ." (Former § 2900.5, subd. (a), italics added.) Thus, under the version of section 2900.5 in effect at the time of defendant's crime, defendant is entitled to presentence custody credits for "days served in home detention pursuant to Section 1203.018." (§ 2900.5, subd. (a).)

We must therefore determine whether the nearly six months defendant spent wearing a GPS device constituted "days served in home detention pursuant to Section 1203.018." (§ 2900.5.) We conclude they did not.

Section 1203.018, which was passed as part of the Criminal Justice Realignment Act of 2011 (Realignment Act), provides in pertinent part: "(a) Notwithstanding any other law, this section shall only apply to inmates being held in lieu of bail and on no other basis. [¶] (b) Notwithstanding any other law, the board of supervisors of any county may authorize the correctional administrator . . . to offer a program under which

7

inmates being held in lieu of bail in a county jail or other county correctional facility may participate in an electronic monitoring program if the conditions specified in subdivision (c) are met." (§ 1203.018.) By its terms, section 1203.018 applies only to "inmates being held in lieu of bail and on no other basis." (§ 1203.018, subd. (a).) Thus, defendant would be entitled to presentence custody credits only for "days served in home detention pursuant to Section 1203.018" (§ 2900.5) if he had previously been an "inmate[] being held in lieu of bail" (§ 1203.018).

The trial court found that defendant was not "[an inmate] being held in lieu of bail" at the time he was placed on electronic monitoring. We have reviewed the record and conclude that the trial court's determination was supported by substantial evidence, including the docket and defendant's own testimony. Defendant was released OR on July 10, 2013. In the weeks that followed, additional information came to light that caused the parties to reconsider defendant's OR release. Although defendant faced the possibility that he might be remanded to custody, that possibility never came to pass. Instead, the parties reached an agreement that allowed defendant to transition directly from OR release to SOR release. As a result, defendant was not "[an inmate] being held in lieu of bail" (§ 1203.018, subd. (a)) at the time he was placed on electronic monitoring. Because defendant was not "[an inmate] being held in lieu of bail" (*ibid.*), he could not participate in a home detention program pursuant to section 1203.018 and was not entitled to additional custody credits pursuant to section 2900.5. Accordingly, we conclude the trial court correctly interpreted sections 2900.5 and 1203.018. As we shall discuss, however, our conclusion does not resolve defendant's appeal, as we must still consider his equal protection claim.

## II. Equal Protection

Next, defendant contends section 2900.5 violates the equal protection clauses of the United States and California Constitutions because persons who participate in

8

electronic monitoring programs pursuant to section 1203.018 are entitled to presentence custody credits, while persons subject to electronic monitoring as a condition of SOR are not. (U.S. Const., 14th Amend.; Cal. Const., art. 1, § 7.) We note with disapproval that the People's four-page brief does not address defendant's equal protection argument. We conclude that defendant has failed to establish an equal protection violation.

"The concept of equal protection recognizes that persons who are similarly situated with respect to a law's legitimate purposes must be treated equally. [Citation.] Accordingly, ' "[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." ' [Citation.] 'This initial inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged." ' " (*People v. Brown* (2012) 54 Cal.4th 314, 328.) "The 'similarly situated' prerequisite simply means that an equal protection claim cannot succeed, and does not require further analysis, unless there is some showing that the two groups are sufficiently similar with respect to the purpose of the law in question that some level of scrutiny is required in order to determine whether the distinction is justified." (*People v. Nguyen* (1997) 54 Cal.App.4th 705, 714.)

Here, in order to show that the two groups are similarly situated for purposes of section 2900.5, defendant must show that the terms of his SOR release were as "custodial" as a statutory home detention program pursuant to section 1203.018. (See *People v. Lapaille* (1993) 15 Cal.App.4th 1159, 1168-1169 (*Lapaille*) [defendant seeking credit for presentence house arrest as a condition of OR under prior version of section 2900.5, subdivision (a), which authorized presentence custody credits for "electronic home detention programs," must show that "his confinement to his home was as custodial, or restraining, as are those confined subject to electronic tracking"]; see also *People v. Pottorff* (1996) 47 Cal.App.4th 1709, 1715 [defendant seeking credits for home

9

detention under prior version of section 2900.5 must show that detention " 'was as custodial' as the confinement of section 1203.016 participants"].) Defendant fails to make the required showing.

Defendant summarily argues that section 1203.018 participants are similarly situated to persons subject to electronic monitoring as a condition of SOR. According to defendant, "those individuals entitled to section 1203.018 credits who were released from jail on electronic monitoring in lieu of bail are similarly situated to those who, like [defendant], were not actually returned to custody because they were offered the option of jail or electronic monitoring. The only difference, then, is that bail was not actually ordered in the latter case because there was no need to." Defendant offers no further analysis or argument, and makes no attempt to show that the conditions of his SOR release were "as custodial, or restraining," as the confinement of section 1203.018 participants. (*Lapaille*, *supra*, 15 Cal.App.4th at p. 1169.)

Defendant's conclusory argument fails to show how section 1203.018 participants and persons subject to electronic monitoring as a condition of SOR are similarly situated under the law. In any event, we conclude that no such showing can be made on the present record.

Section 1203.018, subdivision (b) provides, in pertinent part, that "the board of supervisors of any county *may* authorize the correctional administrator . . . to offer a program under which inmates being held in lieu of bail in a county jail or other county correctional facility may participate in an electronic monitoring program" subject to certain conditions. (§ 1203.018, subd. (b), italics added.) Section 1203.018, subdivision (d) provides, in pertinent part, that "The board of supervisors, after consulting with the sheriff and district attorney, *may* prescribe reasonable rules and regulations under which an electronic monitoring program pursuant to this section may operate." (Italics added.)

10

Here, though defendant bears the burden of showing that section 1203.018 participants and persons subject to electronic monitoring as a condition of SOR are similarly situated, he fails to make even a threshold showing that the board of supervisors has authorized the correctional administrator to offer an electronic monitoring program in Shasta County or adopted rules and regulations governing the operation of such a program. Having failed to establish the existence of a section 1203.018 program in Shasta County, or the rules and regulations applicable to any such program, defendant also fails to show that the conditions of his SOR release were "as custodial, or restraining," as the confinement of section 1203.018 participants, assuming there are any such participants in Shasta County. (*Lapaille*, *supra*, 15 Cal.App.4th at p. 1169.) As a result, defendant has failed to demonstrate that such persons are similarly situated for purposes of section 2900.5.

Based on the foregoing, we conclude that defendant has not met his threshold burden of showing " ' "that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." ' " (*People v. Brown*, *supra*, 54 Cal.4th at p. 328.) Accordingly, his equal protection argument fails.

## DISPOSITION

The judgment is affirmed.

                                                          BUTZ            , J.

We concur:

      BLEASE          , Acting P. J.

      DUARTE         , J.